DICKINSON, Presiding Justice,
dissenting:
¶24. The majority believes the State introduced sufficient evidence for the jury to find Sherman in constructive possession of a can of drain cleaner that police found. But Sherman was not found in close proximity to the drain cleaner, and no evidence whatsoever connected Sherman to the drain cleaner, so I respectfully dissent.
ANALYSIS.
Sherman was not in close proximity to the drain cleaner.
¶ 25. The majority never says Sherman was in close proximity to the drain cleaner. Police interviewed Sherman on his property. They later found the drain cleaner in what they described as the “general vicinity” of where they had observed Sherman walk out of the woods, carrying a fishing pole and tackle box. The officers never suggested that they saw Sherman toss or hide the drain cleaner.
¶ 26. Furthermore, when the police officers saw Sherman walk out of the woods, *869 he was approximately fifteen feet from his trailer. They later found the drain cleaner two trailers away from Sherman’s trailer. So, unless one presumes that a person who is fifteen feet away is in close proximity to drain cleaner that is two mobile homes away (few, if any, mobile homes are only seven feet wide) Sherman was not in close proximity to the drain cleaner.
No evidence connected Sherman to the drain cleaner.
¶ 27. Even if one accepts the majority’s position that “in the vicinity” equals close proximity, our precedent clearly requires more. The majority correctly observes that, while proximity is an essential element, it is “not adequate in the absence of other incriminating circumstances.”[4] The majority says there is more, but, after scrutinizing the record, I am unable to find it.
¶28. The majority says that Sherman — when confronted with the drain cleaner-hung his head and began to cooperate. In reading the majority’s characterization of this event, one might conclude that, upon being confronted with the drain cleaner that was found two trailers away, Sherman immediately hung his head in shame and led the officers to the meth lab. This characterization is at odds with Officer Harris’s testimony.
¶ 29. When asked whether Sherman, upon being confronted with the drain cleaner, admitted wrongdoing, Officer Harris testified: “He did not but we did continue to talk and he later told me that Mr. Harris, help me out and I will show where the lab is.” This testimony hardly establishes cause and effect, that is to say, it hardly proves that the drain cleaner is what caused Sherman later to cooperate.
¶ 30. Also, there is the absence of any testimony from Brewer connecting Sherman to the drain cleaner. In exchange for his testimony against Sherman, Brewer pleaded guilty and was given a favorable deal. Even so, he never connected Sherman to the drain cleaner. And because, in exchange for his deal, he was required to cooperate with the State in its case against Sherman, he certainly would have tied Sherman to the drain cleaner if he could have.
CONCLUSION
¶ 31. Given that Sherman was not in close proximity to the drain cleaner; that he never admitted that the drain cleaner was his; that no evidence tied him to it; and that the State’s star witness did not testify that the drain cleaner was Sherman’s, I simply cannot agree that the State presented sufficient evidence for a jury to find — beyond a reasonable doubt— that Sherman was in constructive possession of the drain cleaner. For these reasons, I respectfully dissent.
CHANDLER AND KING, JJ., JOIN THIS OPINION.

. Curry v. State, 249 So.2d 414, 416 (Miss.1971).